UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-81414-DMM

MARTIN S. BELZ,

    Plaintiff,

v.

EVOLUTION METALS CORP.,
a Florida corporation,
and WILLIAM DAVID WILCOX, JR.,

    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff Martin S. Belz ("Plaintiff" or "Belz") through undersigned counsel pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, files this Amended Complaint against Defendants Evolution Metals Corp. ("Evolution") and William David Wilcox, Jr. ("Wilcox") (together, "Defendants"), and states as follows:

### NATURE OF THE ACTION

This action arises from a loan Defendants induced Belz to make through their brazen lies and misrepresentations, and then wrongfully retained. After Belz declined Wilcox's pleas to become an equity investor in his company, Evolution, he persuaded Belz to make Evolution a loan, which he personally guaranteed, to serve as a deposit toward the acquisition of another company. When the acquisition failed, Evolution and Wilcox pocketed Belz's money. Accordingly, Belz is asserting claims for breach of contract, civil theft, and unjust enrichment against the Defendants.

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is an individual over the age of eighteen (18), and a resident and citizen of

the State of Tennessee.

2. Defendant Evolution is a Florida corporation with its principal place of business located at 516 S. Dixie Highway #209, West Palm Beach, Florida 33401. Evolution is engaged in the mining business.

3. Defendant Wilcox is an individual over the age of eighteen (18), and a citizen of the State of Florida. Wilcox is the President and CEO of Evolution.

4. The Court has subject matter jurisdiction under diversity principles pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different States.

5. Defendants are subject to personal jurisdiction in this Court pursuant to their significant contacts with and activities in the State of Florida, including but not limited to, operating, conducting, engaging in, and carrying on a business or business venture in the State of Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Florida, the agreements at issue provide for venue in the State of Florida, and Defendants are subject to personal jurisdiction in this judicial district.

7. All conditions precent to the filing of this action have been performed, satisfied, or waived.

**FACTUAL ALLEGATIONS**

8. Plaintiff is the Chairman and President of the Peabody Hotel Group ("PHG"), which operates the historic Peabody Hotel in Memphis, Tennessee. PHG is a division of Belz Enterprises, Inc., a developer of hotels, retail, and commercial properties.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

9. As a successful businessman, developer, and executive in the hospitality industry, Plaintiff is always the target for pitches relating to future development opportunities.

10. Accordingly, in or about September 2001, Plaintiff met Walter Berukoff ("Berukoff"), the Chairman of a Canadian company called Leisure Canada Inc. At the time Plaintiff met Berukoff, Leisure Canada had an agreement with the country of Cuba to develop mining, telephone, and hotel opportunities on the island.

11. Plaintiff had previously traveled to Cuba to perform philanthropic work, and after meeting Berukoff, Plaintiff became interested in exploring potential hotel development opportunities in Cuba.

12. In the following years, Berukoff became more focused specifically on mining opportunities. In or about 2008 or 2009, Plaintiff met Guy Chartier ("Chartier"), a Director at Leisure Canada, who worked for Berukoff. Chartier focused specifically on opportunities to develop hotels in Cuba.

13. In or about 2011, Leisure Canada was acquired by Dundee Corporation. Chartier continued to explore hotel development opportunities in Cuba on behalf of Wilton Properties, a former subsidiary of Leisure Canada, and later, on his own.

14. With the goal that PHG would obtain hotel management and ownership benefits as a result, Plaintiff agreed in or about November 2017 to loan Chartier a portion of the funds necessary for Chartier's continued hotel development efforts in Cuba.

15. Between November 2017 and May 2019, Plaintiff loaned Chartier at total of $550,000.00, which Chartier agreed to repay with interest ("Chartier Debt").

16. In or about late 2017, Plaintiff was introduced to Defendant Wilcox through a mutual acquaintance in the finance industry.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

17. After speaking to Plaintiff regarding the projects in Cuba, Wilcox traveled to meet with Plaintiff in Cuba, where Plaintiff introduced Wilcox to Chartier.

18. Thereafter, Wilcox endeavored to locate and introduce potential equity investors for the development opportunities in Cuba that Chartier was working on with support from Plaintiff. Plaintiff met with Chartier and Wilcox in Cuba several times, and Wilcox collaborated with Chartier on the Cuba development opportunities.

19. Wilcox introduced a number of potential investors; however, did not successfully secure any equity investors for the Cuba development opportunities. Wilcox discontinued his efforts related to the Cuba development opportunities after a time.

20. Upon information and belief, Wilcox and Chartier continued to be in contact even after Wilcox stopped working on securing financing for the Cuba development opportunities.

21. Evolution was incorporated in Florida on or about January 29, 2020.

22. Upon information and belief, Chartier began to work for Evolution and with Wilcox on or about May 1, 2020.

23. In or about June 2020, Wilcox contacted Plaintiff about his company, Evolution, and to request an equity investment from Plaintiff in Evolution. Despite repeated advances from Wilcox, Plaintiff was not interested in, and declined to, invest outright in Evolution.

24. Wilcox continued to contact Plaintiff over the next few weeks, and approached Plaintiff in early July 2020 with a proposal that instead of an equity investment, Plaintiff loan Evolution the amount of $200,000.00, which was to serve as a deposit into a Canadian court's registry in connection with a bid to obtain the assets and mining rights of North American Lithium, Inc. ("NAL"), a mining company that was in bankruptcy.

25. As material inducement for Plaintiff to make the loan, Wilcox represented to

4

Plaintiff that the loan would be fully refundable if Evolution was not successful in its bid to acquire NAL. Wilcox repeated this representation in writing in a signed letter on behalf of Evolution, stating that "[t]he loan is solely for E[volution] M[etals] C[orp.]'s deposit at the court appointed monitor for the acquisition of NAL. The deposit is fully refundable and will be returned to you if we are unsuccessful at our acquisition." A true and correct copy of this letter is attached hereto as Exhibit "A" (the "Letter").

26. As a further inducement to Plaintiff to make the loan for the NAL deposit, Wilcox offered to, and did, personally guarantee the Evolution debt of $200,000.00. On information and belief, when seeking these funds from Plaintiff, Evolution and Wilcox had no intention of repaying Plaintiff.

27. As an additional and material inducement to Plaintiff to make the loan for the NAL deposit, and since Chartier was working for Evolution and with Wilcox at that time, Wilcox agreed that Evolution would assume and repay the Chartier Debt, which Wilcox also agreed to personally guarantee. On information and belief, when assuming the Chartier Debt, Evolution and Wilcox had no intention of repaying Plaintiff.

28. As further inducement to Plaintiff, with an option of converting the loan to an equity investment in Evolution, Evolution hired Plaintiff as a consultant. Plaintiff regularly attended the weekly meetings of Evolution via video call, provided his experience and guidance, and assisted Evolution as requested.

29. On July 5, 2020, Plaintiff and Evolution executed a Demand Promissory Note (the "Note"). A true and correct copy of is the Note is attached hereto and incorporated herein as Exhibit "B."

30. On July 5, 2020, Wilcox executed an unlimited Guarantee Agreement in favor of

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

Plaintiff (the "Guarantee"). A true and correct copy of the Guarantee is attached hereto and incorporated herein as Exhibit "C."

31. On July 6, 2020, Wilcox executed the Consulting Agreement on behalf of Evolution. A true and correct a copy of is the Consulting Agreement is attached hereto and incorporated herein as Exhibit "D" (the Note and Guarantee, together with the Consulting Agreement, the "Agreements").

32. The Agreements were drafted by Defendants.

33. The Note provides that Evolution "unconditionally promises to pay ON DEMAND to the order of Marty Belz . . ., in immediately available funds, . . . USD 200,000.00 and to pay interest on the unpaid principal amount hereof at the rates and on the dates specified . . . ." The Note also states that Evolution "in due course, agrees to pay an additional USD $550,000.00 to pay off the debt Guy Chartier owes [Belz]."

34. The Consulting Agreement provides that Evolution "will pay the Consultant a daily rate of $153.00" as a consulting fee.

35. Section 1.4 of the Guarantee provides that the Guarantee covers ". . . all obligations, indebtedness, and liabilities of Debtor [Evolution] of every kind and character owed to Guaranteed Party [Plaintiff] . . . whether heretofore, now, or hereafter made, incurred, or created . . . ." Exhibit C.

36. The Guarantee also explicitly includes the "Loan Documents" in the obligations, which as defined include the Note.

37. On or about July 7, 2020, Plaintiff loaned Evolution $200,000.00 (the "Loan").

38. Evolution has failed to make payments in accordance with the Note and Consulting Agreement, and is in default.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

39. Plaintiff has made demand on Defendants, but Defendants have failed and refused to make payment on the outstanding debt.

40. Evolution currently owes Plaintiff $750,000.00 in principal under the Note, which includes the Loan and Chartier Debt, plus unpaid interest and attorneys' fees, all of which is subject to Wilcox's personal guarantee.

41. Evolution owes unpaid consulting fees plus interest and attorneys' fees to Plaintiff, all of which is subject to Wilcox's personal guarantee.

42. On February 5, 2025, Plaintiff delivered a civil theft demand letter to Evolution and Wilcox, demanding the return of the amount due under the Note and Guarantee and for statutory treble damages pursuant to Section 772.11, Florida Statutes.

43. To date, neither Evolution nor Wilcox has returned Plaintiff's funds.

44. All conditions precedent to the institution of this action have been satisfied, performed, waived, or would be futile.

**COUNT I**
**BREACH OF CONTRACT (NOTE)**
**(Evolution)**

45. Plaintiff incorporates the allegations in paragraphs 1 through 44 above as if fully set forth herein.

46. The Note is a valid and enforceable contract between Plaintiff and Evolution.

47. Evolution materially breached the Note by failing to pay Plaintiff the amounts due under the Note.

48. As a direct and proximate result of Evolution's breach of the Note, Plaintiff has suffered and continues to suffer damages.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

## COUNT II
## BREACH OF CONTRACT (CONSULTING AGREEMENT)
### (Evolution)

49. Plaintiff incorporates the allegations in paragraphs 1 through 44 above as if fully set forth herein.

50. The Consulting Agreement is a valid and enforceable contract between Plaintiff and Evolution.

51. Plaintiff provided his services as agreed in the Consulting Agreement.

52. Evolution materially breached the Consulting Agreement by failing to pay Plaintiff the amounts due under the Consulting Agreement.

53. As a direct and proximate result of Evolution's breach of the Consulting Agreement, Plaintiff has suffered damages.

## COUNT III
## BREACH OF CONTRACT (GUARANTEE)
### (Wilcox)

54. Plaintiff incorporates the allegations in paragraphs 1 through 44 above as if fully set forth herein.

55. The Guarantee is a valid and enforceable contract between Plaintiff and Wilcox.

56. Wilcox materially breached the Guarantee by failing to pay Plaintiff upon demand the amounts due under the Consulting Agreement and under the Note, which includes the Chartier Debt.

57. As a direct and proximate result of Wilcox's breach of the Guarantee, Plaintiff has suffered and continues to suffer damages.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

## COUNT IV
## CIVIL THEFT
**(Evolution)**

58. Plaintiff incorporates the allegations in paragraphs 1 through 44 above as if fully set forth herein.

59. On February 5, 2025, Plaintiff delivered to Evolution a written civil theft notice, pursuant to Florida Statutes section 772.11, demanding the return of the stolen funds.

60. Evolution obtained and used Plaintiff's funds with the intent to permanently deprive Plaintiff of the funds.

61. Evolution has appropriated Plaintiff's funds for its own use or benefit.

62. Evolution has failed to return Plaintiff's funds.

63. Evolution did not have the right to retain Plaintiff's funds.

64. At all material times, Evolution knew that it did not have the right to retain the funds due to Evolution's unsuccessful bid to acquire the assets of NAL.

65. As a result of Evolution's conduct, Plaintiff has suffered damages.

## COUNT V
## CIVIL THEFT
**(Wilcox)**

66. Plaintiff incorporates the allegations in paragraphs 1 through 44 above as if fully set forth herein.

67. On February 5, 2025, Plaintiff delivered to Wilcox a written civil theft notice, pursuant to Florida Statutes section 772.11, demanding the return of Plaintiff's stolen funds.

68. Wilcox obtained and used Plaintiff's funds with the intent to permanently deprive Plaintiff of the funds.

69. Wilcox has appropriated Plaintiff's funds for his own use or benefit.

9

70. Wilcox has failed to return Plaintiff's funds.

71. Wilcox did not have the right to retain Plaintiff's funds.

72. At all material times, Wilcox knew that he did not have the right to retain the funds due to Evolution's unsuccessful bid to acquire the assets of NAL.

73. As a result of Wilcox's conduct, Plaintiff has suffered damages.

## COUNT VI
## UNJUST ENRICHMENT
### (Evolution and Wilcox)

74. Plaintiff incorporates the allegations in paragraphs 1 through 28, 37, and 39 above as if fully set forth herein.

75. Plaintiff conferred benefits on Defendants in the form of a loan and in providing consulting services.

76. Defendants voluntarily accepted, used, and retained the benefits.

77. Under the circumstances, it would be unjust for Defendants to retain the benefits conferred by Plaintiff without compensation, *i.e.*, paying back the loan and compensating Plaintiff for the consulting services provided.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Wilcox and Evolution for compensatory damages, treble damages, interest, costs, and attorneys' fees, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims triable as of right.

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
*t:* 305-755-9500 | *f:* 305-714-4340 | WWW.BERGERSINGERMAN.COM

**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Fax: (954) 523-2872

By: *s/ Marianne Curtis*
Marianne Curtis
Florida Bar No. 92729
mcurtis@bergersingerman.com
Ana E. Kauffmann
Florida Bar No. 89092
akauffmann@bergersingerman.com
mvega@bergersingerman.com
lmonteagudo@bergersingerman.com
drt@bergersingerman.com

11

BERGER SINGERMAN

1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
*t:* 305-755-9500 | *f:* 305-714-4340 | WWW.BERGERSINGERMAN.COM

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 10, 2025, a true and correct copy of the foregoing was served electronically through the Courts' CM/ECF system upon all parties registered to receive electronic notice.

By: */s/ Marianne Curtis*
    Marianne Curtis

BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
*t:* 305-755-9500 | *f:* 305-714-4340 | WWW.BERGERSINGERMAN.COM